United States District Court
Middle District of Florida
Orlando Division

**OMAR ORTIZ,**

    *Plaintiff,*

v.                                                            No. 6:20-cv-790-PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

___

# Order

    Omar Ortiz brings this action under 42 U.S.C. § 405(g) to review a final decision of the Acting Commissioner of Social Security denying his application for disability insurance benefits. Under review is a decision by an Administrative Law Judge (ALJ) signed on January 16, 2020. Tr. 14–36. Ortiz contends the ALJ erred by discounting the opinion of Jairo Nunez, M.D. *See generally* Doc. 20. The Acting Commissioner contends there is no error. *See generally* Doc. 21. Because Dr. Nunez's opinion concerns mental impairments, this order omits discussion of physical impairments.

    According to Ortiz, he began suffering from anxiety in the late 1980s while serving as an air traffic controller in the Air Force. Tr. 56, 61–62, 237, 385, 609–10. He later worked as a radiologic technologist for 17 years before stopping work because of anxiety attacks and "outbursts." Tr. 44–45, 71, 607. He tried to continue to work through his anxiety attacks and could do so with supervisors who understood because they were veterans themselves and excused his behavior. Tr. 393. Shortly before he stopped working, a new

supervisor counseled him and sent a report to human resources about his behavior. Tr. 359, 365, 393, 519, 527–27, 543, 607, 619. He exhausted his leave under the Family Medical Leave Act because he just "can't function" due to the panic attacks. Tr. 528. He alleges he became unable to work on November 26, 2018.[1] Tr. 193. After that date, he was hospitalized for six days for anxiety and depression. Tr. 392.

The ALJ found Ortiz suffers from severe impairments of depression and anxiety disorder but they fail to meet the severity of a listed impairment. Tr. 19–20. The ALJ specifically considered listing 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders). Tr. 19–20. The ALJ found Ortiz does not meet the "paragraph B" and the "paragraph C" criteria, citing progress notes, medical and psychological records, function reports, activities, and testimony. Tr. 19–22. The ALJ stated that the residual functional capacity (RFC) assessment reflects the degree of limitation from the "paragraph B" criteria. Tr. 22.

The ALJ found Ortiz possesses the RFC to perform a reduced range of light work with these mental limitations: no work at a production-rate pace; occasional changes in routine workplace setting; occasional contact with co-workers, supervisors, and the general public; and likely to be absent from work on an unscheduled basis (including the probationary period) one day a month. Tr. 22. The ALJ found that despite Ortiz's mental impairments, the records show he maintains the ability to perform work activities within the limits of the RFC. Tr. 25.

---

[1] For disability insurance benefits, a claimant must show disability by the date last insured. 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131. Ortiz's date last insured is December 31, 2022. Tr. 202.

Dr. Nunez is Ortiz's "mental health treatment coordinator" at the Orlando VA Medical Center. Tr. 560. Dr. Nunez sees Ortiz for thirty-minute visits, three times a month, but "sooner when on crisis." Tr. 437. In a mental impairment questionnaire signed on February 1, 2019, Tr. 437–40, Dr. Nunez assessed Ortiz's functional limitations, Tr. 439. By that date, Dr. Nunez had treated Ortiz for five years. Tr. 608. Dr. Nunez noted that Ortiz's diagnoses include panic disorder with agoraphobia and unspecified anxiety disorder, manifesting in multiple "signs and symptoms," including thoughts of suicide, difficulty thinking or concentrating, persistent irrational fear, and recurrent severe panic attacks on average at least once a week. Tr. 437, 439. He opined that Ortiz's mental impairments cause extreme limitations in activities of daily living; extreme difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and four or more episodes of decompensation within a 12-month period, each lasting at least two weeks. Tr. 29, 438. He opined Ortiz would be absent from work more than four days monthly due to his impairments or for treatment. Tr. 29, 440. He opined Ortiz's prognosis is "limited" due to severity and persistent long-term symptoms. Tr. 438.

> The ALJ found Dr. Nunez's opinion "unpersuasive" because the opinion
>
> is not fully supported by the internal elements of that opinion, which although noting the claimant's multiple impairments, fails to include objective medical findings that could support such extreme degrees of limitation. Further, Dr. Nunez'[s] opinion is not consistent with evidence of record, as mental status examinations show normal memory, normal concentration, normal and linear and goal oriented thought process, and normal cooperation with the examiner (Exhibits 1F/16, 27, 31, 36, 5F/10, and 7F/67, 86). Further, the record does not document episodes of decompensation as described by Dr. Nunez['s] opinion.

Tr. 29.

Because Ortiz filed his application for benefits in December 2018, Tr. 193, the Social Security Administration's revised medical evidence rules apply. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Ortiz concedes the revised rules apply, Doc. 20 at 11, and raises no challenge to their legality, *see generally* Doc. 20. The ALJ stated he had considered the medical opinions and prior administrative medical findings under the revised rules. Tr. 23, 27–29.

Under the revised rules, the SSA no longer uses the term "treating source" and will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the SSA will evaluate the persuasiveness of a medical opinion from a medical source considering, as appropriate, "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." *Id.* § 404.1520c(a) & (c)(1)–(5).

Under the revised rules, supportability and consistency "are the most important factors" in determining the persuasiveness of a medical source's medical opinion or prior administrative findings. *Id.* § 404.1520c(b)(2). Because they are the most important factors, the SSA will explain in the decision "how [it] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2).

A court's review of an ALJ's decision is limited to whether substantial evidence supports the factual findings and whether the correct legal standards

4

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.* An ALJ must state the grounds for his decision with enough clarity to allow a court to conduct a meaningful review. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

Here, although the ALJ considered the correct factors and explained how he considered the two most important ones—consistency and supportability—substantial evidence fails to support the ALJ's reasons for finding Dr. Nunez's opinion unpersuasive.

The ALJ discounted Dr. Nunez's opinion under the rationale that the opinion was inconsistent with mental status examinations showing normal memory; normal concentration; normal, linear, and goal-oriented thought process; and normal cooperation with the examiner, relying on Exhibit 1F at 16, 27, 31, 36; Exhibit 5F at 10; and Exhibit 7F at 67, 86, which correspond to Tr. 359, 370, 374, 379, 458, 563, 582. Tr. 29. Although the records on which the ALJ relied show some normal findings, the records viewed as a whole are not inconsistent with Dr. Nunez's opinions. *See* Tr. at 359 (reported memory concerns, negative thoughts, "sky high" anxiety, and reported worries about losing his job after "blowing up at his supervisor");[2] 370 (anxious mood, flat affect, pressured speech, preoccupied, fidgeting, reported problems with short-term memory, suicidal ideation, and limited insight into behavior); 379 (anxiety has "escalated significantly"; "[v]ery irritable" and "easily panicky";

---

[2]Notably, page 359 of the administrative transcript contains none of the normal findings the ALJ referenced.

"presently impaired to work due to severity of his [l]ong term symptoms"; insomnia; "[n]eeded repeated reassurances during visit"); 457–58, 582 (anxious mood, flat affect, pressured speech, preoccupied, fidgeting, reported problems with short-term memory, suicidal ideation, preoccupated thought process, and limited insight into behavior). In addition, the ALJ relied on the fact that on admission to an acute psychiatric unit for a 6-day hospital stay for anxiety and depression, Ortiz was appropriately dressed and well groomed, Tr. 27 (citing Exhibit 1F at 50), but "pertinent findings on admission," missing from the ALJ's decision, include "acting 'keyed up,' fear of losing control, hypervigilance, intrusive or persistent thoughts, impulses or images, and nightmares," and that he was placed on 15-minute suicide checks, Tr. 393, 395.

Other records, not discussed by the ALJ, do not conflict with extreme limitations. *See* Tr. 368–69 (chronic suicidal ideation with plan, thoughts of taking pills; difficulty staying on topic; preoccupied with thoughts and struggles to answer questions directly; and depression and anxiety screening scores at highest level, indicating severe depression and anxiety); 371–75 (stressors from persistent mental health issues, transient suicidal thoughts when overwhelmed by symptoms that put him on "the brink of com[]ing to the emergency room," depression and anxiety screening scores at highest level, difficulty sleeping, decreased interest and pleasure in activities, problems with motivation, moderate guilt and worthlessness, no energy, and difficulty concentrating and making decisions); 377–78 (difficulty sleeping; decreased interest and pleasure in activities; problems with motivation; moderate guilt and worthlessness; no energy; difficulty concentrating and making decisions); 455–57 (chronic suicidal ideation, "I woke up and thought I don't want to wake up"; intrusive and rapid thoughts; excessive worry; lack of motivation; lack of energy; decreased desire to get out of bed; and depression and anxiety

6

screening scores at highest possible level, indicating severe depression and anxiety); 562 (anxiety daily); 580–81 (anxiety daily, chronic suicidal ideation, appears anxious and overwhelmed); 583–86 (depression and anxiety screening scores at highest level, indicating severe depression and anxiety; after "suicidal ideation in past month" the record says "yes – wish to die").

Moreover, Dr. Nunez opined that Ortiz has suicidal thoughts, Tr. 439, and the record is replete with references to chronic suicidal ideation, *see, e.g.*, Tr. 399, 495, 546, 558, 559, 567, 570, 580, 581, 585–86, 615, but in the decision, the ALJ does not mention suicide. Dr. Nunez also opined that Ortiz has "severe anxiety with intermittent panic attacks," Tr. 437, and the record consistently showed that Ortiz suffers from panic attacks, but in the decision, the ALJ does not mention panic attacks. *See, e.g.*, Tr. 519–20 (daily anxiety and panic attacks; "at times feels he is dying and feels like giving up"); 528 (panic attacks at work); 550 (difficulties in last job because of panic attacks); 567 (emergency room visit due to anxiety and panic attacks that have become more persistent); 606 (avoids church fearing panic attacks); 617 (panic attacks multiple times a day and does not drive because of anxiety); 746 (little improvement in managing anxiety with recurrent panic attacks).

Considering these records, substantial evidence fails to support the ALJ's finding that Dr. Nunez's opinion is inconsistent with the evidence. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108 (11th Cir. 2021) ("[T]he fact that Simon can communicate, maintain eye contact, and follow simple instructions during a mental-health evaluation does not have any obvious bearing on his mood swings, his panic attacks, his outbursts of anger, or his fear of leaving his home"; "[I]t goes almost without saying that many people

7

living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities.").

The ALJ also discounted Dr. Nunez's opinion under the rationale that the opinion was "not fully supported by the internal elements of that opinion, which although noting the claimant's multiple impairments, fails to include objective medical findings that could support such extreme degrees of limitation." Tr. 29. But the Orlando VA mental health records show objective clinical findings that support Dr. Nunez's opinion, which are missing from the ALJ's decision. These include diagnostic screenings for anxiety and depression with results at the "severe" level, *see* Tr. 368–70, 400–404, 455–57, 474, 555, 580–81, 583–86, 715–17; and suicide-risk screenings using the Columbia-Suicide Severity Rating Scale (C-SSRS)[3] assessing that Ortiz has suicide risk factors, *see* Tr. 398–02, 405–406, 474–77, 585–86.

The ALJ also discounted Dr. Nunez's opinion under the rationale that the record does not document episodes of decompensation as described by Dr. Nunez. Tr. 29. The questionnaire completed by Dr. Nunez defines "episodes of decompensation" as:

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace. Episodes of decompensation may be demonstrated by exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).

---

[3]The C-SSRS is "[a] questionnaire used to assess suicide risk." https://www.hrsa.gov/behavioral-health/columbia-suicide-severity-rating-scale-c-ssrs. The scale is evidence-supported. https://cssrs.columbia.edu/the-columbia-scale-c-ssrs/evidence/ (last visited September 23, 2021).

Tr. 438. Dr. Nunez checked that Ortiz experiences "[t]hree or more episodes ... within 12 months, each at least two weeks long." Tr. 440. As mentioned above, screenings consistently showed that Ortiz was at risk of suicide and suffered from extreme depression and anxiety. *See* Tr. 540 ("reports he has sought help when decompensated from his wife and providers"); 610 (cannot leave the house because of anxiety).

Remand to reevaluate Dr. Nunez's opinion is warranted. Because of this remand, the Court need not consider another issue raised by Ortiz—the ALJ failed to consider the opinion of Julie Bartholomae, D.O., *see* Tr. 525–43—and instead directs the Acting Commissioner to also consider any opinion by Dr. Bartholomae.

Thus, the Court **reverses** the Acting Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and **remands** the case to the Acting Commissioner to reevaluate Dr. Nunez's opinion, consider any opinion by Dr. Bartholomae, and take any other appropriate action. The Court directs the clerk to enter judgment for Omar Ortiz and against the Acting Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on September 23, 2021.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

9